IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs in Knoxville November 28, 2017

**STATE OF TENNESSEE v. MARVIN DEVON SUMMERS**

**Appeal from the Circuit Court for Bedford County**
**No. 18226     F. Lee Russell, Judge**

_____

**No. M2017-00033-CCA-R3-CD**

_____

A Bedford County jury found the Defendant, Marvin Devon Summers, guilty of theft of property valued between $10,000 and $60,000.  The trial court sentenced the Defendant to serve a ten-year sentence.  On appeal, the Defendant asserts that the evidence is insufficient, his sentence is excessive, and he requests plain error review of "all objections" and "all issues regarding venue and jurisdiction."  After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and J. ROSS DYER, J., joined.

Roger Clay Parker, Shelbyville, Tennessee, for the appellant, Marvin Devon Summers.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Robert J. Carter, District Attorney General; Michael David Randles and Richard A. Cawley, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the theft of two Cub Cadet utility terrain vehicles ("UTV") parked at Smith Equipment in Shelbyville, Tennessee.  For his role in this theft, a Bedford County grand jury indicted the Defendant for theft of property valued between $10,000 and $60,000.  At trial, the parties presented the following evidence:  Roger Dale Smith, the owner of Smith Equipment, testified that Smith Equipment largely built parts for lawn mowers that were sold on Amazon.  In 2009, however, Smith Equipment also

sold lawn mowers, lawn equipment, and UTVs. He recalled that in 2009, Smith Equipment was an authorized dealer for Cub Cadet Utility Vehicles.

Mr. Smith testified that he came to work at around 7:30 a.m. on September 28, 2009. When he arrived, he noticed that one of the two UTVs, normally parked by the front door of the store, was not there. Mr. Smith stated that the UTV had been parked by the door the night before when he left at 10:30 p.m. The UTV was inventory owned by Smith Equipment for sale, and Mr. Smith confirmed that it was "brand new." He testified that the "[d]ealer cost" for that UTV was $7,600 but that he sold that type of vehicle for between $9,000 and $9,500.

Due to the fact that the UTV was missing, Mr. Smith "took inventory" to see if anything else was stolen and found another UTV was missing. Mr. Smith testified that the second utility vehicle missing was owned by a customer, Nathan Walker, and had been parked on the back side of the building while "waiting to be serviced." Mr. Smith described Mr. Walker's UTV as having been used "very little" and, thus, it was in very good condition. He said that Mr. Walker's UTV had all the possible "options" such as "[g]un racks, chrome wheels, [a] hard top." Mr. Smith said the invoice for this UTV was $11,950. Mr. Smith stated that, because Mr. Walker was employed as a vice president for Cub Cadet, it is likely he received a company discount because that particular UTV's retail value was between $14,000 and $15,000.

Mr. Smith testified that the fair market value of the UTVs combined was approximately $23,000. Mr. Smith stated that the UTVs required a key to start, and neither vehicle had the key in it when taken. As to Mr. Walker's UTV, Mr. Smith believed that Mr. Walker retained the key and left Smith Equipment to use a master key to move or work on the UTV. Mr. Smith testified that he contacted Mr. Walker upon learning that his UTV had been stolen, and that Mr. Walker was "not the happiest" and gave no indication that he had given someone permission to take it. Ultimately, Smith Equipment replaced Mr. Walker's UTV for him.

Mr. Smith testified that the Cub Cadet vehicles that were stolen each weighed approximately two thousand pounds and could not be pushed onto a trailer by one person working alone. Mr. Smith identified photographs of the two stolen UTVs. He said that both vehicles could be put into neutral without a key but were not easily pushed. He explained that the "transmission drag is hard on them."

Mr. Smith testified that he did not know Ricardo Demling or the Defendant and that he had not given either man, or any other person, permission to take the vehicles on the night of September 27 or the early morning hours of September 28, 2009.

Benjamin Burris, a Bedford County Sheriff's Office ("BCSO") deputy, testified that he reported to Smith Equipment on September 28, 2009, to investigate a theft report. Deputy Burris spoke with Mr. Smith and began his report; however, Mr. Smith could not provide the serial numbers for both of the vehicles at that time, so Deputy Burris did not finish his report until October 1, 2009. After receiving the serial numbers for the UTVs, the numbers were entered into a data base, NCIC, that records and tracks stolen items.

Willie Allison, a Tennessee Highway Patrol ("THP") state trooper, testified that on September 28, 2009, he conducted a traffic stop at 4:45 p.m. just inside Clay County on Highway 53. He stated that this location was approximately three hours and fifteen minutes away from Shelbyville. The vehicle was a grey and pink Suburban pulling a trailer with two UTVs; a "greenish one" and a yellow UTV. Trooper Allison conducted the traffic stop because the trailer lights were not illuminating when the brakes were employed. The Defendant was driving the vehicle and Mr. Demling was the only passenger. Both men appeared to be "a little nervous;" however, Trooper Allison said that was common for individuals stopped by law enforcement.

Trooper Allison testified that during the stop he began inquiring about the UTVs because it struck him as odd that the UTVs were brand new while the Suburban was in "rough shape." Both men, separately, told him that they were hired in Shelbyville to transport the two UTVs to Kentucky, but neither man could name the person who had hired them. They indicated to the state trooper that this type of work was common for them. Trooper Allison thought this was suspicious because this type of work would require an "H tag" for the trailer and there was not one. Trooper Allison checked the dealer tag on the trailer to confirm that the trailer was registered to the Suburban owner and found that it was not. Upon questioning, neither the Defendant nor Mr. Demling could tell the state trooper exactly where they were delivering the UTVs to in Kentucky nor could they produce keys for the UTVs. Ultimately, because the two men could not show proof of ownership, Trooper Allison had the trailer and UTVs towed and held for someone with proof of ownership to retrieve.

Trooper Allison testified that he was unable to find the serial numbers on the UTVs and thus could not check NCIC to see if they had been reported stolen.

Brian Ferris, a BCSO deputy, testified that he was assigned as the investigator for this case. He could not recall the specifics of this investigation but said that, in cases of this nature, he would generally start contacting investigators in several counties looking for the stolen items. In early November 2009, Deputy Ferris was notified that there was a "hit confirmation," meaning that someone had entered the VIN numbers from the stolen UTVs in a search on NCIC. Based upon this, Deputy Ferris contacted Trooper Allison who had conducted the stop involving the stolen UTVs. Deputy Ferris also was in

- 3 -

contact with a "CID officer" who emailed Deputy Ferris photographs of the UTVs for confirmation. Deputy Ferris identified the photographs that the CID officer sent him. Deputy Ferris then attempted to locate the Defendant and Mr. Demling, the men driving the trailer with the UTVs. Deputy Ferris was unsuccessful in locating either man but, in January 14, 2010, obtained warrants for theft of property valued over $10,000 against both the Defendant and Mr. Demling. These warrants were also entered into NCIC and, in May or June of 2015, Deputy Ferris was notified of their arrests.

After hearing the evidence, the jury convicted the Defendant of theft of property valued over $10,000. At a subsequent hearing, the trial court sentenced the Defendant, as a multiple offender, to serve ten years in the Tennessee Department of Correction. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the evidence supporting his theft conviction is insufficient, his sentence is excessive, and the Defendant requests that plain error review of "all objections" and "all issues regarding venue and jurisdiction."

### A. Sufficiency of the Evidence

The Defendant argues that the evidence supporting his conviction is insufficient. Specifically, he challenges his identification and "the description of the property" as insufficient. The State responds that the evidence at trial supports that the Defendant stole the UTVs beyond a reasonable doubt. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457

(Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

The jury convicted the Defendant of theft of property valued over $10,000 and less than $60,000. This crime requires a jury to find the following elements beyond a reasonable doubt: (1) that the defendant knowingly obtained or exercised control over property owned by another; (2) that the defendant did not have the owner's effective consent; and (3) that the defendant intended to deprive the owner of the property. T.C.A

§ 39-14-109 (2014). Theft of property is a Class C felony if the value of the property obtained is between $10,000 and $60,000. T.C.A. § 39-14-105(3) (2014).

The evidence, viewed in the light most favorable to the State, established that in the late night hours of September 27, 2009, or the early morning hours of September 28, 2009, two UTVs were taken from the Smith Equipment property without Mr. Smith's knowledge or consent. According to Mr. Smith's testimony, the collective value of the two vehicles was approximately $23,000. The same day that Mr. Smith found the UTVs missing from Smith Equipment, the Defendant was stopped approximately three hours away, driving a Suburban pulling a trailer with two UTVs. The Defendant could provide no proof of ownership of the UTVs, could not identify the owner of the UTVS, and could not provide a specific location to which he was taking the UTVs. It was later established that the vehicle identification numbers on the UTVs found on the trailer the Defendant was hauling matched the vehicle identification numbers of the stolen vehicles.

We conclude that the evidence is sufficient to support the jury's finding that the Defendant committed theft. Shortly after the vehicles went missing, the Defendant was in possession of the vehicles and allegedly taking them to Kentucky. His explanation as to why he possessed the stolen vehicles was not credited by the jury. Thus, we find the evidence sufficient to support the jury's finding beyond a reasonable doubt that the Defendant knowingly obtained or exercised control over property owned by Smith Equipment and Mr. Walker, that the property had a value greater than $10,000, that the Defendant did not have the owners' consent, and that the Defendant intended to deprive the owners of the property. *See* T.C.A. § 39-14-103 and § 39-14-105(3) (2014). He is not entitled to relief on this issue.

## B. Sentencing

The Defendant argues that his sentence is excessive and "contrary to law." The State responds that the trial court acted within its discretion in ordering a ten-year sentence. We agree with the State.

Appellate review of sentences is under the abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this Court must presume the sentence to be reasonable. *Bise*, at 704-07. As the *Bise* Court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708. We are also to recognize that the defendant bears "the burden of showing that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

At the sentencing hearing, the trial court applied two enhancement factors, that the Defendant had felonies in addition to those needed to establish his status as a Range II offender, and the Defendant's previous failure to follow the condition of a sentence involving release into the community. The presentence report shows that the Defendant had, in addition to those used to establish his range, three felony convictions and multiple misdemeanor convictions in support of factor (1). T.C.A. § 40-35-114 (2014). As to enhancement factor (8), that the Defendant had previously failed to follow the conditions of a sentence involving release into the community, the trial court noted that the Defendant's record indicated seven probation revocations. T.C.A. § 40-35-114. Additionally, the trial court applied one mitigating factor, finding that the theft did not cause or threaten bodily injury. T.C.A. § 40-35-113(1) (2014). The trial court then considered consecutive sentencing. In ordering the Defendant's ten-year sentence to run consecutive to a twelve-year sentence the Defendant was already serving, the trial court found that the Defendant had an extensive history of criminal activity. T.C.A. § 40-35-115(b)(2) (2014).

Based upon this evidence, the trial court did not err in ordering the Defendant to serve a ten-year sentence or in ordering the sentence to run consecutively to his prior

sentence. There was ample evidence in the record supporting each of the two factors relied upon by the trial court to enhance the sentence and the factor relied upon to order consecutive sentencing in this case. The trial court complied with the purposes and principle of the Sentencing Act and imposed a within-range sentence. Thus, the Defendant is not entitled to relief on this issue.

### C. Plain Error Review

In his final issue, the Defendant asks this court to conduct "plain error review." The entirety of this issue within his brief states, "Namely it is requested that all objections be reviewed. Also it is requested that all issues regarding venue and jurisdiction be reviewed."

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides in part that a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Rule 10(b) of this court provides that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). The Defendant's brief does not conform to Tennessee Rule of Appellate Procedure 27(a)(7), and consequently, the issue of "plain error review" is waived, pursuant to Tennessee Court of Criminal Appeals Rule 10(b).

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE